IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:25-CR-00106-KDB-DCK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| | ) | |
| TIAWANA BROWN, TIJEMA BROWN, and ANTIONETTE ROUSE | ) | |
| | ) | |

## I. PROCEDURAL HISTORY

On May 21, 2025, a federal Grand Jury in the Western District of North Carolina indicted defendants Tiawana Brown, Tijema Brown, and Antionette Rouse with Wire Fraud Conspiracy in violation of 18 U.S.C. § 1349 (Count One) and three counts of Wire Fraud in violation of 18 U.S.C. § 1343 (Counts Two, Three, Four). ECF No. 1.

On February 9, 2026, Defendant Tiawana Brown pleaded guilty to Count One pursuant to a plea agreement.[1] ECF Nos. 57, 60. On March 27, 2026, the United States Probation Office filed a draft Presentence Investigation Report. ECF No. 65. The Defendant did not object to the offense level calculation nor the statement of relevant conduct. ECF No. 73. On April 16, 2026, the United States Probation Office filed the final Presentence Investigation Report. ECF No. 74.

On April 1, 2026, Defendant Tijema Brown pleaded guilty to Count One pursuant to a plea agreement.[2] ECF Nos. 63, 66. On May 6, 2026, the United States Probation Office filed a draft Presentence Investigation Report. ECF No. 76. The Defendant did not object to the draft

[1] The United States has agreed to dismiss Count Four as to Defendant Tiawana Brown. ECF No. 57.
[2] The United States has agreed to dismiss Counts Two and Four as to Defendant Tijema Brown. ECF No. 63.

Presentence Investigation Report. On May 28, 2026, the United States Probation Office filed the final Presentence Investigation Report. ECF No. 77.

On June 15, 2026, Defendant Antionette Rouse pleaded guilty to Count One pursuant to a plea agreement.[3] ECF Nos. 79, 81. On July 24, 2026, the United States Probation Office filed a draft Presentence Investigation Report. ECF No. 85. The Defendant did not object to the offense level calculation. ECF No. 86. On August 10, 2026, the United States Probation Office filed the final Presentence Investigation Report. ECF No. 87.

## II. FACTUAL BACKGROUND

The Indictment alleged *inter alia* that the Defendants participated in a conspiracy to defraud the Small Business Administration ("SBA") and certain private lenders by submitting fraudulent COVID-19 loan applications pursuant to the Economic Injury Disaster Loan ("EIDL") and Paycheck Protection Program ("PPP") programs. ECF No. 1.

### A. Defendant Tiawana Brown

As set forth more fully in Defendant Tiawana Brown's PSR (ECF No. 74, pp. 4-10), Defendant Tiawana Brown fraudulently submitted four EIDL applications with false information between April 3, 2020, and January 19, 2021. Defendant Tiawana Brown received a total of $22,500 of EIDL loan funds from the SBA as a result, with another $20,000 of attempted loan funds.

Defendant Tiawana Brown also submitted a false application for PPP funds. Defendant Tiawana Brown's daughter and Co-Defendant, Tijema Brown, assisted in submitting this application. As part of the application, Defendant Tiawana Brown submitted a fake 2019 Internal Revenue Service ("IRS") Schedule C Form for the purported business, which reflected certain

[3] The United States has agreed to dismiss Count Three as to Defendant Antionette Rouse. ECF No. 63.

revenue, expense, and profit figures. This form was fake, as it was never filed with the IRS. This fake form was identical to the Schedule C Forms previously submitted by Defendant Tijema Brown and Defendant Antionette Rouse for their respective PPP applications. Defendant Tiawana Brown received $20,833 in PPP loan funds into a non-profit business checking account under the name Beauty After The Bars. Approximately one month after receiving the PPP loan proceeds, Defendant Tiawana Brown spent approximately $15,000 using that same bank account to fund an extravagant birthday party for herself, including thousands of dollars spent on catering, the venue, a photographer, a rented throne, and a horse-drawn carriage, among other expenditures.

In total, Defendant Tiawana Brown defrauded government relief programs out of $43,333 through her fraudulent applications, with another $20,000 in attempted loans.

B. <u>Defendant Tijema Brown</u>

As set forth more fully in Defendant Tijema Brown's PSR (ECF No. 77, pp. 4-10), Defendant Tijema Brown fraudulently submitted three EIDL applications with false information between June 25, 2020, and August 17, 2021. Defendant Tijema Brown received a total of $10,000 of EIDL loan funds from the SBA as a result.

Defendant Tijema Brown also submitted two false applications for PPP funds. As part of the applications, Defendant Tijema Brown submitted a fake 2019 IRS Schedule C Form for the purported business, which reflected certain revenue, expense, and profit figures. This form was fake, as it was never filed with the IRS. This fake form was identical to the Schedule C Forms later used by Antionette Rouse and Tiawana Brown for their fraudulent PPP applications. Defendant Tijema Brown received $41,666 in PPP loan funds as a result. Defendant Tijema Brown also assisted Defendant Tiawana Brown in submitting her PPP application, which resulted in another $20,833 in PPP loan funds.

In total, Defendant Tijema Brown defrauded government relief programs out of $51,666 through her fraudulent applications, and assisted Defendant Tiawana Brown with her fraudulent $20,833 PPP loan.

C. Defendant Antionette Rouse

As set forth more fully in Defendant Antionette Rouse's PSR (ECF No. 87, pp. 4-9), Defendant Antionette Rouse fraudulently submitted an EIDL application with false information on June 26, 2020. Defendant Antionette Rouse received a total of $10,000 of EIDL loan funds from the SBA as a result.

Defendant Antionette Rouse also submitted two false applications for PPP funds. As part of the applications, Defendant Antionette Rouse submitted a fake 2019 IRS Schedule C Form for the purported business, which reflected certain revenue, expense, and profit figures. This form was fake, as it was never filed with the IRS. This fake form was identical to the Schedule C Forms used by Tijema Brown and Tiawana Brown for their fraudulent PPP applications. Defendant Antionette Rouse received $41,666 in PPP loan funds as a result.

In total, Defendant Antionette Rouse defrauded government relief programs out of $51,666 through her fraudulent applications.

## III. THE APPLICABLE SENTENCING GUIDELINES RANGE

Before going through the § 3553(a) statutory factors, "a district court must begin by correctly calculating the applicable Guidelines range." *United States v. Evans*, 526 F.3d 155, 160 (4th Cir. 2008) (quotations omitted). "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark" for a sentencing determination. *Gall v. United States*, 552 U.S. 38, 49 (2007). The Guidelines "seek to embody the § 3553(a) considerations, both in principle and in practice . . . it is fair to assume that the

Guidelines, insofar as practicable, reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Rita v. United States*, 551 U.S. 338, 350 (2007). "[A] Guidelines sentence will usually be reasonable, because it reflects both the Commission's and the sentencing court's judgment as to what is an appropriate sentence for a given offender." *Id.* at 351. While 18 U.S.C. § 3553(a) instructs the Court to "impose a sentence sufficient, but not greater than necessary to comply with the purposes set forth" in 18 U.S.C. § 3553(a)(2), a Defendant's Guidelines range is one factor the Court must consider in determining an appropriate sentence. 18 U.S.C. § 3553(a)(4).

According to the Defendants' PSRs, the United States Sentencing Guidelines calculation for each Defendant results in a criminal history category of I, an offense level of 9, and a Guidelines range of four to ten months of imprisonment for each. The United States Probation Office determined that each Defendant meets the criteria for a Zero-Point Offender offense level reduction.

The three Defendants' Guidelines ranges each fall within Zone B of the Guidelines Sentencing Table. Pursuant to a Zone B Guidelines range, the minimum term of imprisonment may be satisfied by: (1) a sentence of imprisonment; (2) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention, provided that at least one month is satisfied by imprisonment; or (3) a sentence of probation that includes a condition or combination of conditions that substitute intermittent confinement, community confinement, or home detention for imprisonment. U.S.S.G. § 5C1.1(c).

Pursuant to the Guidelines, since each Defendant received an adjustment as a Zero-Point Offender, a sentence other than a sentence of imprisonment, in accordance with U.S.S.G. §§ 5C1.1(b) and (c)(3), is "generally appropriate." U.S.S.G. § 5C1.1, Application Note 9. Consistent with the terms of each of the three plea agreements, if the Court adopts the Guidelines range set

forth in the Defendants' respective PSRs, and finds that the applicable Guidelines range for the respective Defendants are in Zone B of the Sentencing Table, the Government does not oppose a sentence of probation for that defendant, including the required conditions of Guidelines sections 5B1.1(a)(2) and 5C1.1(c)(3).

The Guidelines direct that if probation is imposed, the term shall be at least one year but not more than five years. U.S.S.G. § 5B1.2(a)(1). In addition, pursuant to the Guidelines, the sentence of probation shall include a condition or combination of conditions that substitute intermittent confinement, community confinement, or home detention for the term of imprisonment. U.S.S.G. §§ 5B1.1(a)(2); 5C1.1(c)(3). Title 18, United States Code, Section 3563(a)(2) sets forth that the Court shall provide, as an explicit condition of a sentence of probation for a felony that Defendants also abide by at least one condition set forth in subsection (b)(2) (restitution) or (b)(12) (community service), unless the Court has imposed a fine or extraordinary circumstances exist.

## IV. <u>The Defendants Should Be Required to Pay Restitution</u>

The Government requests that the Court order restitution for losses incurred by the principal victim in this case, the SBA. Restitution for the crime of conviction is mandatory under the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A(c)(1)(A)(ii). To that end, the MVRA requires defendants convicted of covered offenses "to restore property lost by their victims as a result of the crime." *Robers v. United States*, 572 U.S. 639, 640 (2014); *see also United States v. Simmonds*, 235 F.3d 826, 831 (3d Cir. 2000) (the MVRA's "primary and overarching goal . . . is to make victims of crime whole, to fully compensate these victims for their losses and to restore these victims to their original state of well-being"). Specifically, the MVRA requires defendants to return the property lost by the victims as a result of the crime. 18 U.S.C. §

3663A(b)(1)(A). If returning the property is "impossible, impracticable, or inadequate," the defendant must pay the victim "an amount equal to [] the greater of [] the value of the property on the date of the damage, loss, or destruction; or the value of the property on the date of sentencing" reduced by "the value (as of the date the property is returned) of any part of the property that is returned[.]" 18 U.S.C. § 3663A(b)(1)(B).

In the plea agreements, Defendants each agreed to entry of an order for monetary penalties, including restitution, to all victims directly or indirectly harmed by their respective relevant conduct. With regard to Defendant Tiawana Brown's loans, the SBA has submitted a claim for restitution in the amount of $23,683.25. Exhibit A. With regard to Defendant Tijema Brown's loans, the SBA has submitted a claim for restitution in the amount of $56,798.42. Exhibit B. With regard to Defendant Antionette Rouse's loans, the SBA has submitted a claim for restitution in the amount of $56,798.42. Exhibit C.

## V. <u>The Defendants Should be Required to Pay a Forfeiture Money Judgment</u>

In the plea agreements, Defendants each agreed to an entry of a money judgment in the amount specified in the charging document. Defendant Tiawana Brown received $43,333 in fraudulent loan proceeds. As Defendant Tiawana Brown and a third party have repaid $20,833 of the PPP loan proceeds, the United States requests that the Court order Defendant Tiawana Brown to pay a $22,500 forfeiture money judgment. This amount reflects the EIDL loan proceeds received by Defendant Tiawana Brown that have not yet been repaid.

Defendant Tijema Brown received $51,666 in fraudulent loan proceeds. The United States requests that the Court order Defendant Tijema Brown to pay a $51,666 forfeiture money judgment.

Defendant Antionette Rouse received $51,666 in fraudulent loan proceeds. Defendant Antionette Rouse has agreed to an order of forfeiture in the amount of $51,666. ECF No. 83. The United States requests that the Court enter this order as a part of its judgment.

Respectfully submitted,

DALLAS J.E. KAPLAN[4]
FIRST ASSISTANT UNITED STATES ATTORNEY

By:
__/s/__*Matthew Warren*______________
MATTHEW WARREN
N.Y. Bar No. 4959474
Assistant United States Attorney
United States Attorney's Office
Western District of North Carolina
227 West Trade Street, Suite 1650
Charlotte, North Carolina 28202
(704) 344-6222
Matthew.Warren@usdoj.gov

[4] Acting under authority conferred by 28 U.S.C. § 515.