IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>TIAWANA BROWN | Case No.: 3:25CR106<br><br>**DEFENDANT'S SENTENCING MEMORANDUM** |

The PSR finds Brown at a 9/I, with a guideline range of 4 to 10 months in Zone B. The Court should impose a straight probationary sentence, with no custodial component. The sentencing guidelines and the individual circumstances of defendant's case support such an outcome.

U.S.S.G. § 5C1.1, n. 10 provides that a noncustodial sentence is generally warranted when a zero-point offender falls within Zone A or Zone B. Such a sentence is otherwise warranted where:

- Brown repaid the entire PPP loan — $20,833 — to the SBA in March of 2025. An EIDL loan remains outstanding.
- She has been punished. The charge cost her a nine-year job at American Airlines, a position at Carolinas Care Partnership, her seat on the Charlotte City Council, and her college scholarship. She has also endured vile, demeaning attacks far beyond anything a criminal charge ordinarily brings.
- She built something out of nothing. She grew up in public housing, gave birth to her younger daughter while serving a federal sentence in the 1990s. She rebuilt her life after incarceration and built an organization that houses women coming home from prison. She will take a hard lesson from this and rebuild again. She just earned a B.A. from Johnson C. Smith and has started a transportation company as her first steps.

- As set forth *infra* at p. 9, straight probation would avoid a sentencing disparity both within the district and nationally.
- The loss thresholds change on November 1, 2026, which puts her at the very low end of the 6-level bump for loss amount.

## BACKGROUND

The offense was serious. Brown has accepted a factual basis that publicly laid out that conduct for the media to run with. Between April 2020 and September 2021 she submitted EIDL and PPP applications to the SBA and to a PPP lender that contained false information about her businesses — resulting in her receiving money she was not entitled to. She used that money for purposes not related to the business.

In March of 2025, Brown paid the PPP loan back. She wrote the SBA a letter and two cashier's checks totaling $20,833 — full repayment of loan number 3054088906.

She has been on pretrial supervision since May 23, 2025. Her officer reports a satisfactory adjustment. There is no question she has criminal history, but it is so old that she has no criminal history points.

**<u>What Brown came from.</u>**

Brown is 54. She grew up in Southside Homes, public housing in Charlotte's South End, raised by her mother. Her father was absent from her life, and is now dead. By her early twenties she was in federal court in this district on a student loan fraud scheme and was sentenced to 33 months. She

was pregnant when she went in. She was taken from the prison to a hospital to deliver her daughter Tijema and then returned to the prison without her; her mother went to the hospital and took the baby home so the child would not go into foster care. Both of her daughters' fathers were incarcerated during the girls' formative years, and Brown raised the two of them essentially alone once she came home. Neither of them had a criminal record prior to the instant offense.

That is the hole she climbed out of after federal prison. Her last felony conviction is from 1994. Every one of her prior cases scores zero criminal history points because they are all more than twenty years old.

**<u>What Brown built.</u>**

In 2017 Brown founded Beauty After the Bars, a Charlotte nonprofit for women returning from incarceration, and she has run it since. Her organization services some of the poorest corners of the county. When a woman with no income or assets, or supporting family, is released from prison, there needs to be some sort of support. She can't just be released from a bus station and expect to have a chance. Brown's organization helped, and still helps, fill that need.

In April of 2023 the organization opened its first home in Mint Hill. Mayor Vi Lyles spoke at the ribbon cutting. A second home followed on the

Beatties Ford Road corridor in April of 2024, bringing the two houses to twenty-four beds. Beauty After the Bars also began a reentry and mentoring program with the Mecklenburg County Jail. Before this case, Brown's homes took placements referred by United States Probation.

She holds a United Way nonprofit management certification, and North Carolina peer support and community health worker certifications. In June of 2025 she completed the intensive-track Certificate in Nonprofit Management at Duke University's program in Learning Innovation and Lifetime Education. Her work has also drawn recognition outside Charlotte — a 2023 President's Lifetime Achievement Award for volunteer service, She Built This City's 2025 Change Maker Award, and official citations from the Maryland General Assembly and the New York State Senate.

In 2022, voters elected her to the City Council, where she served from 2023 to 2025. She was the first Charlotte City Council member with a felony record. While the naysayers and internet trolls love to trot that fact out in contrast to her instant offense, it remains a tremendous accomplishment and shows that second chances are available.

Brown left Johnson C. Smith University in 1992 without a degree. She went back three decades later and finished, earning A's in every course she took after she returned. The University conferred her Bachelor of Arts degree this year. A doctoral candidate at the University of North Carolina built a stage

production around Brown and three other women who were pregnant while incarcerated. It sold out.

**<u>What the letters say.</u>**

Mark Jerrell is the Chairman of the Mecklenburg County Board of County Commissioners, writing in his personal capacity. He states he would call her when a family in the county needed help or an issue needed someone willing to take it on. He notes that her advocacy has sometimes meant crossing powerful interests, and that she did it anyway.

Pierre came into Brown's program in December of 2023, homeless and sleeping in a truck. Brown offered him housing but conditions it with firm rules as a condition of staying. Nearly three years later he is still in the house, working, and able to have his son visit him there.

Alesha Brown (no relation) is an attorney who has worked alongside Brown since 2018 on reentry, housing, and youth programming. The Court will also find letters from Tarra Simmons, a Washington State Representative and lawyer who served with Brown on the board of the National Council for Incarcerated and Formerly Incarcerated Women and Girls; Robert Dawkins of Action NC, who went door to door with Brown through Southside Homes during the pandemic; and Kerwin Pittman, who runs a reentry nonprofit in Goldsboro and has offered Brown a role in that work going forward.

**What this case has cost her.**

American Airlines fired her on December 3, 2025 for the charge. She had worked there since 2016. She lost her salary, benefits, and health coverage. She now buys insurance on the marketplace for $600 a month.

Carolinas Care Partnership, where she did community engagement work, ended her employment in June of 2025 because of this case. She was indicted in the middle of her first term on the City Council, a $50,000 position, and she was not re-elected. Johnson C. Smith revoked her scholarship. Her speaking engagements, her consulting work, and the funding streams her nonprofit depends on have suffered. Her net worth in the PSR is now negative $14,735.

Brown obtained $43,333 in this offense and has given $20,833 back. This prosecution has cost her several times what the fraud ever paid.

She has also been the subject of intense negative publicity since her indictment that goes well beyond publicity that accompanies a criminal charge. The comments to those articles are even worse, and have been filled with racially charged vitriol. Brown initially responded to the press, but has generally avoided the media since her Rule 11.

**Where Brown will go from here:**

Brown rebuilt her life from nothing (while raising two daughters on her own). She will do it again.

She has built and registered a transportation company that will take her into her next chapter.

## ARGUMENT

**<u>The sentencing factors support a probationary sentence.</u>**

Brown is a 54-year-old woman with zero criminal history points. Her federal conviction is more than three decades old. Her last prior conviction for any criminal offense (a misdemeanor worthless check) is over 20 years old. There were a small number of dismissed charges that extended until 2008. In the nearly 20 years since then, she rehabilitated herself and rebuilt her life. She created organizations that focus on helping others rebuild their lives after incarceration, especially women. Probation supervises the women who live in her houses. That is an unusual thing for a sentencing court to be able to say about a defendant.

The offense is serious. The sentence must reflect that. But the punishment is already substantial. Brown has lost her airline job, the Carolinas Care position, her elected office, and her scholarship. She has paid back the entire PPP loan. She has agreed to pay the SBA's remaining balance and fees associated with both loans. A felony conviction for pandemic fraud, entered against a sitting City Council member and reported in every newspaper in Charlotte, and in national news, is not getting off easy. It is a serious general deterrent to anyone else in public life who might be tempted.

Specific deterrence and public protection are not live concerns. Brown has been on supervision for more than a year without incident. She is 54, she has no substance abuse history, and she has spent the past two decades teaching other people the lesson this case is supposed to teach. Even if the court were to assume a pattern, it would recur in her late 70's.

Restitution cuts the same way. Brown owes the SBA, and the probation office calculates she can pay $465 a month if she is working. Her remaining out is the best way for the Government to get its money back.

**<u>Her guideline range turns on a dollar threshold that changes on November 1.</u>**

Probation notes in the report that because Brown is a zero-point offender whose range falls in Zone A or B, a sentence other than imprisonment is generally appropriate. USSG § 5C1.1, comment. (n.10). The only reason straight probation requires anything further is that a Zone B range carries a confinement condition. A Zone A range does not.

Six of Brown's nine offense levels come from the loss table. Effective November 1, the threshold for that six-level increase rises (due to inflation) from more than $40,000 to more than $55,000. That bracket extends up to $150,000.

The money that actually left the government on Brown's applications was $43,333. There is an additional $20,000 in intended loss. Combining both, Brown falls at the low end of that bracket.

**<u>Probation avoids an unwarranted disparity.</u>**

Pandemic relief fraud has been resolved in this district across a wide range. The dollar figures have frequently driven the outcomes.

Recently, this Court sentenced Shawn O'Donnell to 10 months home confinement and two years of probation for at least four separate fraudulent PPP loans. That defendant submitted various fraudulent tax forms and payroll documentation as part of the PPP process. He obtained $219,000 as a result of the various applications, after having applied for over $340,000 in fraudulent loans. *See* 3:25CR135, Doc. 3. According to the Government, "O'Donnell used the funds for improper business expenses and personal expenses such as a beach house vacation, car purchases, E*Trade and Robinhood investments, children sports fees, and travel, among others." *See id.* at Doc. 27, p. 1. The Government's filing also indicates that the loan was not repaid prior to sentencing. *Id.* at p. 7. His advisory guidelines were 15-21 months imprisonment.

Judge Conrad also similarly imposed probation for a PPP fraud offense with a larger loss amount. *See* 3:22CR140.

- **National statistics**

National statistics support the same outcome. Judiciary Sentencing Information (JSIN) provides that, for fiscal years 2020-2025, the median sentence for § 2B1.1 defendants at Offense Level 9, Criminal History I (both with and without § 5K1.1 departures) is zero months. (Available at: https://jsin.ussc.gov/analytics/saw.dll?Dashboard).

Similarly, the Sentencing Commission's Interactive Data Analyzer (the IDA Dashboard available at https://ida.ussc.gov/analytics) provides that 62.7% of § 2B1.1 defendants in Zone B receive a noncustodial sentence. In our district, that number is 62.5%. Those sentences cover individuals throughout Zone B, which covers Offense Levels 9-11 for offenders in criminal history category I. Brown falls under Offense Level 9.

## CONCLUSION

This Court should impose a probationary sentence with no custodial or home-detention component, and order restitution. A term of probation is sufficient to punish this offense, to deter Brown and others, to protect the public, and, unlike a period of confinement, to get the SBA paid. It is also the sentence that lets the twenty-four women living in Brown's houses keep their beds.

Respectfully submitted,

s/ Rob Heroy
W. Rob Heroy
Bar No. 35339
Goodman Carr, PLLC
301 S. McDowell St., #602
Charlotte, NC 28204
Phone: 704-372-2770
E-mail: rheroy@goodmancarr.net

## Certificate of Service

On September 14, 2026, I served a copy of the preceding sentencing memo on AUSA Matthew T. Warren and AUSA Benjamin Bain-Creed through ECF.

s/ Rob Heroy